## ERASTUS M. HUNT vs. WILLIAM H. WILLIAMS.

A. drew an order on B. payable to C. out of funds which B. was to receive from a contract for houses. It was accepted by B. "when there is money in my possession" from the contract for houses. A., already a debtor to B., had made a contract to build houses with a third party, who was to pay the price by instalments to B. "on account of" A. After some payments had been made, A. abandoned the contract, which was completed by B. at a loss.

In an action by C. against B. on the acceptance, —

*Held*, that B. was entitled to prove the circumstances in which the acceptance was made and the payments received, in order to show that the money received was not A.'s money.

*Held*, further, that if the money when in B.'s hands was ever the money of A., B. could not retain it in set-off against A.'s indebtedness.

*Held*, further, that in the circumstances, the question whether the money in B.'s hands was ever the money of A. should be left to the jury.

EXCEPTIONS to the Court of Common Pleas.

*July* 30, 1887. DURFEE, C. J. This is *assumpsit* on an ac-

cepted order on the defendant by one John Davidson in favor of the plaintiff. The order was written on the back of a bill of $333.45 for bricks sold by the plaintiff to Davidson for use in building two houses called the Earle and Read houses. It was as follows : —

"PAWTUCKET, *August* 7, 1884.

"Mr. W. H. Williams, please pay to the Pawtucket Coal Co. the amount of the within bill, and apply the same to the next instalment due from Mr. J. H. Harris on the Earle and Read houses. "(Signed,) JOHN DAVIDSON."

The defendant's acceptance was as follows : —

"Accepted, W. H. Williams, August 7, 1884, when there is money in my possession from the Earle and Read houses."

It appeared in evidence adduced by the plaintiff that he carried on business under the name of the Pawtucket Coal Co.; that, at the date of the order, there was an agreement between said Davidson and said Harris, which Davidson was then performing, by which he agreed to furnish materials and do the mason work in building the Earle and Read houses for the sum of $7,057, to be paid by Harris in instalments, as the work progressed, to the defendant " on account of said Davidson ; " that Harris paid to the defendant under the contract on account of the houses the sum of $2,100 on the 29th day of December, 1884, and the defendant paid the plaintiff $100 on his claim, but did not then, and has not since then, paid him the residue thereof.

The defendant proved that soon after the acceptance Davidson, who had previously been at work on the houses under his contract, abandoned the work, whereupon the defendant took it, and carried it on, at an expense of $739.30, so far that Harris paid him said sum of $2,100, and that afterwards he completed the houses. The defendant also testified, subject to exceptions, that at the time the acceptance was given he had advanced to Davidson the sum of $2,810.04 on account of the houses, and had received from Harris $1,250, leaving a balance of $1,560.04 then due, which sum, with the $739.30, amounted to $2,293.30, and more than absorbed the $2,100 received. He also testified that at the completion of the houses he was a loser by about $600 ;

also that Davidson, from the commencement of the work on the houses to the present time, had always been largely indebted to him on that account; that Davidson had been indebted to him before contracting to build the houses, and that he himself had no interest in the contract, except his hope that he would be able, by assisting Davidson, to collect his original debt, and so had the money paid to himself and passed through his hands " on account of said Davidson ; " that when Davidson abandoned the contract he took it up to save himself from loss, if possible, and that the abandonment had occasioned the loss sustained.

At the close of the testimony the plaintiff asked the court to instruct the jury that, inasmuch as what remained of the $2,100 received by the defendant from Harris, after deducting the $739.30 expended by him, was more than enough to pay the acceptance, he, the plaintiff, was entitled to a verdict, the defendant having no right to retain for his own advances; but the court refused, and instructed the jury that, on the facts shown, about which there was no dispute, the defendant was entitled to a verdict, and the jury returned a verdict for the defendant accordingly.

We think the evidence relating to the circumstances under which the order was accepted, and under which the money from the Earle and Read houses was received, was properly admitted, it being admissible for the purpose of showing that the money when received was not money in the defendant's possession belonging to Davidson; for, until the defendant had money in his possession belonging to Davidson, there was no consideration for the acceptance, and the plaintiff could not maintain any action thereon. We do not think the acceptance of a non-negotiable order, without any consideration for the acceptance, can bind the acceptor any more than the giving of a non-negotiable promissory note could bind the maker.

We think, however, that the evidence in regard to these circumstances was such that the plaintiff was entitled to go to the jury upon the question, whether the money as received was the money of Davidson ; for this was a question of fact, and upon the evidence, as reported in the bill of exceptions, was, in our opinion, not so clear but that the jury should have been left to decide it.

We think the position taken by the plaintiff, and supported by cases cited by him, is correct, namely, that if the money was ever Davidson's money while in the defendant's possession, it would be no defence to this action for him to say that Davidson was indebted to him, and that he had a right as against Davidson to retain it by way of set-off. His only available defence here is, that the money in his hand was never Davidson's money; and, on the evidence as reported, we can see only two ways in which he can claim to have proved it. He might have claimed that the arrangement between him and Davidson was such that he was to receive the money from Harris as payment for his advances until his advances were fully repaid. Under such an arrangement the money received would be his money until the advances were repaid, not Davidson's. The defendant did not directly testify that such was the arrangement, though we think the jury might have inferred, from the circumstances testified to by him, that this was in effect the arrangement as understood by the parties. Or, secondly, the defendant might have claimed that, in completing the work on the Earle and Read houses after it had been abandoned by Davidson, he acted, not for Davidson, but wholly for himself, and that his application of the proceeds to Davidson's debt to him was purely gratuitous, something which Davidson could not have required; for Davidson, having abandoned the work voluntarily, was entitled to nothing for what he had done beyond what had been previously paid to him, unless the contract was completed for him by the defendant. *Carpenter* v. *Gay*, 12 R. I. 306. We do not think it is clear that the defendant did not do it for him, and therefore the question whether he did it or not, inasmuch as the plaintiff's right to recover may have been dependent on it, should have been left to the jury.

*Exceptions sustained and case remitted for a new trial.*

*Claudius B. Farnsworth*, for plaintiff.

*Dexter B. Potter*, for defendant.